# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

ANTONIO PASSARO JR.,

    Plaintiff,

v.                                              Civil Action No. 2:17cv48

COMMONWEALTH OF VIRGINIA
&
VIRGINIA DEPARTMENT OF
STATE POLICE,

    Defendants.

## OPINION AND ORDER

In this employment discrimination action, the Defendants, the Commonwealth of Virginia and the Virginia Department of State Police, seek summary judgment on all claims brought by the Plaintiff, Antonio Passaro Jr. The Defendants argue a prior final judgment from the Circuit Court for the City of Chesapeake, Virginia, bars the claims Plaintiff pursues in the present case. For the reasons explained below, the claims decided against Passaro in the prior judgment arose out of the same conduct as the claims in the present case, and the Defendants have not waived the benefit of claim preclusion. Consequently, the court will GRANT the Defendants' Motion for Summary Judgment (ECF No. 31).[1]

## I. BACKGROUND.

Because the Motion for Summary Judgment largely turns on the procedural history of Passaro's two employment cases, the events underlying the dispute are only summarized briefly

---

[1] Although Passaro requested oral argument on the motion (ECF No. 35), the court finds the issues are thoroughly presented in the written submissions, and argument would not aid the decisional process. Fed. R. Civ. P. 78; E.D. Va. L. Civ. R. 7(J).

below. All facts are considered in the light most favorable to Passaro as the non-moving party to this summary judgment motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).

Passaro was employed as a law enforcement officer with the Department from 1997 to his termination in 2013. See EEOC Charge (ECF No. 13-1); Decision of Hearing Officer at 1, 16 (ECF No. 32-3). Passaro's national origin is Italian. EEOC Charge (ECF No. 13-1). With the State Police, he served as a special agent investigating "high technology crimes." Decision of Hearing Officer at 2 (ECF No. 32-3). High technology crimes dealt largely with the possession and manufacture of child pornography. Id. at 9. In the course of these investigations, he claims he "'had to download up to 39,000 images and hundreds of videos [of child pornography].'" Id. (quoting Grievant Ex. 10[2]). In September 2012, Passaro was diagnosed with post-traumatic stress disorder from having to repeatedly view child pornography in the course of his employment. Id.

Passaro received numerous disciplinary notices and counselings for unsatisfactory performance both before and after his diagnosis for PTSD and prior to his termination. See id. at 3. His supervisors accused him of making a false official statement, not following his supervisor's instructions or policies, theft, and damaging state property or records. Decision of Hearing Officer at 1 (ECF No. 32-3). The Department issued a notice to terminate Passaro for theft and damaging state property or records in March 2013. As permitted under state law, Passaro exercised his right to grieve the termination, and in June 2013, an administrative hearing officer reviewed the proposed termination under the procedures prescribed in Virginia Code § 2.2-3000. See id.

---

[2] Filed in this court as part of ECF No. 32-2.

2

Hearing officers appointed to consider employment grievances have extensive authority to resolve the dispute, including the authority to

> 1. Hold conferences for the settlement or simplification of issues;
>
> 2. Dispose of procedural requests;
>
> 3. Issue orders requiring testimony or the production of evidence;
>
> 4. Administer oaths and affirmations;
>
> 5. Receive probative evidence; exclude irrelevant, immaterial, insubstantial, privileged, or repetitive proofs, rebuttals, or cross-examinations; rule upon offers of proof; and oversee a verbatim recording of the evidence;
>
> 6. Receive and consider evidence in mitigation or aggravation of any offense charged by an agency in accordance with rules established by the Department of Human Resource Management . . .; and
>
> 7. Take other actions as necessary or specified in the grievance procedure.

Va. Code § 2.2-3005(B). That hearing officer has the authority to review

> a complaint or dispute by an employee relating to the following adverse employment actions in which the employee is personally involved, including but not limited to (i) formal disciplinary actions, including suspensions, demotions, transfers and assignments, and dismissals resulting from formal discipline or unsatisfactory job performance; (ii) the application of all written personnel policies, procedures, rules and regulations where it can be shown that policy was misapplied or unfairly applied; (iii) discrimination on the basis of race, color, religion, political affiliation, age, disability, national origin or sex; (iv) arbitrary or capricious performance evaluations; (v) acts of retaliation as the result of the use of or participation in the grievance procedure or because the employee has complied with any law of the United States or of the Commonwealth, has reported any violation of such law to a governmental authority, has sought any change in law before the Congress of the United States or the General Assembly, or has reported an incidence of fraud, abuse, or gross mismanagement; and (vi) retaliation for exercising any right otherwise protected by law.

Va. Code § 2.2-3004. The hearing officer must produce a written opinion explaining her decision and has the authority to order reinstatement, back pay, full reinstatement of "fringe

3

benefits," mitigation or reduction of the agency disciplinary action, or "any combination of these remedies." Va. Code § 2.2-3005.1.

In Passaro's case, following a hearing at which he was represented by counsel, id. at 1, the hearing officer issued a 17-page written decision rescinding the notices for making a false official statement, theft, and damaging state property or records. Id. at 16. The hearing officer upheld the warning for not following instructions or policies and upheld Passaro's termination on the basis of the accumulation of disciplinary action against him. Id.

The Virginia Department of Human Resource Management ("DHRM") reviewed the hearing officer's decision and found there was no cause to reverse it. Admin. Rev. (ECF No. 32-4). The same agency confirmed the findings were consistent with DHRM policies and those of the agency employing Passaro. (ECF No. 32-5).

a. **Passaro's Appeal of the Grievance Process in State Court.**

As permitted by Virginia Code § 2.2-3000, Passaro appealed to the Circuit Court for the City of Chesapeake for review of the hearing officer's decision, and the Circuit Court affirmed the hearing officer's decision in December 2015. Tr. at 258-260 (ECF No. 32-7). The Virginia Court of Appeals also affirmed the hearing officer's decision. Passaro v. Commonwealth, 67 Va. App. 357, 362 (2017). The Supreme Court of Virginia denied Passaro's petition for appeal in March 2018. Order, Passaro v. Commonwealth, No. 170378 (Va. Mar. 27, 2018) (ECF No. 32-8). It denied a request for rehearing of that decision in May 2018. Order, Passaro v. Commonwealth, No. 170378 (Va. May 11, 2018) (ECF No. 32-9).

b. **Passaro's Federal Claims.**

In February 2013, approximately one month before he received a notice of termination, Passaro filed a charge with the EEOC alleging the Department had discriminated against him in

4

violation of Title VII and the Americans with Disabilities Act and retaliated against him for previous complaints about discriminatory conduct against him. EEOC Charge (ECF No. 13-1). He alleged he was "taken out of work," denied a transfer to a different job that would accommodate a disabling mental health condition, recommended for demotion, and recommended for termination, all because of his national origin and his mental health condition. Id. He also alleged he was retaliated against due to his complaints about discrimination and his requests for an accommodation for his mental illness. Id. In August 2016, the U.S. Department of Justice and the EEOC both issued Passaro letters giving him permission to sue his employer for the alleged unlawful conduct. (ECF Nos. 13-3, 13-4). On December 30, 2016, he filed the instant case in the Circuit Court for the City of Virginia Beach, which was subsequently removed to this court. Notice of Removal (ECF No. 1). After a partial dismissal, Passaro amended his complaint and refiled it. Am. Compl. (ECF No. 13). Because of the pending proceedings in state court related to the judicial review of Passaro's termination, this court stayed the case generally in October 2017, pending the outcome of those proceedings. Order (ECF No. 24).

In his federal case, Passaro has alleged claims of retaliation and national origin discrimination. See Am. Compl. at 7 (ECF No. 13); Pl.'s Br. at 10 (ECF No. 34). He challenges the alleged harassment against him, the Department's decision not to transfer him to a different unit in order to accommodate his mental illness, and the Department's decisions to terminate and/or demote him. Pl.'s Br. at 10 (ECF No. 34). He seeks back pay, reinstatement to employment, attorney's fees, and related relief. See Am. Compl. at 7 (ECF No. 13). The Commonwealth seeks summary judgment on all of Passaro's claims in this court, asserting that they are barred by the final judgment in the state court case confirming the hearing officer's decision. Defs.' Br. at 5-10 (ECF No. 32). For the reasons described below, the court agrees.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## III. ANALYSIS

"The records and judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This court must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980). This obligation serves the both the interest of economizing litigation expenses and bolstering "the comity between state and federal courts that has been recognized as a bulwark of the federal system." Id. at 95-96. A state judgment affirming a decision by an administrative agency is no less powerfully preclusive. Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 109 (1991); accord Johnson v. Virginia, No. 4:11cv26, slip op. at 5-6 (E.D. Va. June 16, 2011); Martin-Bangura, 640 F. Supp. 2d at 737-41. This case therefore turns on whether a Virginia court would give the prior judgment from the Chesapeake Circuit Court preclusive effect over Passaro's present claims.[3]

"'Every litigant should have opportunity to present whatever grievance he may have to a court of competent jurisdiction; but having enjoyed that opportunity and having failed to avail himself of it, he must accept the consequences.'" Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 146-47 (2017) (quoting Miller v. Smith, 109 Va. 651, 655 (1909)). "[C]laim preclusion in Virginia operates to bar any claim that could have been brought in conjunction with a prior claim, where the claim sought to be barred arose out of the same conduct, transaction, or

---

[3] The distinction between claim preclusion and issue preclusion was often famously confused. See, e.g., Crowe v. Leeke, 550 F.2d 184, 187 (4th Cir. 1977); Martin-Bangura, 640 F. Supp. 2d at 735. The abandonment of the Latin and French-influenced res judicata and collateral estoppel in favor of the much-clearer claim and issue preclusion seems to have cured much of the misunderstanding. See Allen v. McCurry, 449 U.S. 90, 94 n. 5 (1980) (citing Restatement (Second) of Judgments § 74 (Tent. Draft No. 3, Apr. 15, 1976). In the instant Motion for Summary Judgment, the Defendants primarily assert claim preclusion, sometimes referring to the claims as barred by res judicata.

7

occurrence as the previously litigated claim." Martin-Bangura, 640 F. Supp. 2d at 738 (citing Va. Sup. Ct. R. 1:6(a); Smith v. Ware, 244 Va. 374, 376 (1992)). In Virginia, Rule 1:6 articulates the broad preclusive effect of previously litigated claims, consistent with the philosophy stated over a century ago in Miller. See id. If the claim could have been brought in the prior action, it is barred from a subsequent action if it arose from the "same conduct, transaction, or occurrence." Va. Sup. Ct. R. 1:6.

Passaro advances two theories in his effort to defeat claim preclusion. He first argues the present claims could not have been heard together by the hearing officer, and that the state court judgment therefore did not have preclusive effect. He also argues the Commonwealth and the Department waived their right to assert the state court judgment's preclusive effect in the present litigation. Both arguments are insufficient to raise a disputed question of material fact. Therefore, summary judgment for the Defendants is appropriate on the basis of claim preclusion.

a. **The Present Claims Arise out of the Same Conduct as the Previous Claims, and the State Court Could Have Heard the Present Claims, so the Prior Judgment Will Preclude the Claims Pending in This Court.**

Claim preclusion is available in Virginia when (1) there has been a final judgment on the merits in another court; (2) there is an identity of parties between the two cases; (3) the present claim arises out of the same "conduct, transaction, or occurrence" as the claim on the case in which final judgment has been entered; and (4) the party against whom preclusion is asserted could have brought the present claim in the earlier case. Martin-Bangura, 640 F. Supp. 2d at 738-39; Davison v. Rose, No. 1:16cv0540, 2017 WL 3251293, at *8 (E.D. Va. July 28, 2017); Lee v. Spoden, 290 Va. 235, 248 (2015) (articulating requirement for identity of parties).

Passaro concedes there was a final judgment in the previous case and that the parties are identical. See Pl.'s Br. at 7-11 (ECF No. 34). He only disputes whether the present claims arise out of the same conduct, transaction, or occurrence as the claims resolved in the state court

litigation and relatedly whether the state court could have heard his present claim in the previous state court action. Both of these arguments are insufficient to defeat summary judgment.

Passaro first notes that the EEOC charge was filed prior to his termination, observing its focus was on "pre-termination discrimination and retaliation, whereas the grievance filed by Passaro focused on the termination decision." Id. at 9. Acknowledging that "some of" Passaro's assertions and evidence were the same in both proceedings, he nonetheless claims they were not part of the "same conduct, transaction, or occurrence," noting that at the time he filed his EEOC charge of discrimination he had not yet been terminated. See Id. But regardless of the timing, Passaro's present claims—that he was harassed, denied a transfer, recommended for termination or demotion because of his national origin and disability, and retaliated against for making protected complaints—all arose from the same conduct, transaction, or occurrence as his eventual termination, which was the subject of the state court judgment. Additionally, he states, "The state grievance proceeding was not designed to resolve Passaro's prior complaint pending with the EEOC and did not involve the same rights and remedies." Id. Again, this is incorrect; both the hearing officer and the state court had the authority under Virginia law to hear the present claims. Because the claims arose out of the same conduct and because the state court could have heard the present claims, they are precluded.

Passaro also argues that the prior final judgment is not preclusive because the administrative grievance process "was not designed to resolve Passaro's prior complaint pending with the EEOC." Pl.'s Br. at 10. But this is a semantic difference only. While the state hearing officer's jurisdiction did not extend to Title VII claims expressly, the administrative grievance process can be used to remedy a wide range of discriminatory and retaliatory conduct. See Va. Code § 2-2.3004(A). In Martin-Bangura—a case very similar to Passaro's—a grievant making

use of the § 2.2-3000 grievance process to challenge his termination, "had the opportunity to mitigate the disciplinary termination he received by offering evidence of discriminatory termination, but plaintiff chose not to address the issue." 640 F. Supp. 2d at 734. The hearing officer upheld the disciplinary termination. Id. When the plaintiff later tried to pursue the Title VII remedies in a separate federal action, this court held that the hearing officer could have considered both the wrongful termination and discriminatory discipline claims together, and as a result the plaintiff's federal claims were precluded. Id. at 739-41. As in Martin-Bangura, the various claims that Passaro asserts in this litigation all fell within the hearing officer's wide authority. Nearly all of conduct Passaro challenges in this court was, in fact, explicitly raised in his grievance filings, and addressed by the hearing officer's detailed written opinion. To the extent Passaro challenges conduct here which was not presented to the hearing officer, such conduct could have been raised during the administrative hearing.

Since Martin-Bangura, the Supreme Court of Virginia interpreted Rule 1:6 in a commercial case, rejecting as precluded a successive claim for breach of an independent contractor's agreement. The court found the later claim barred by earlier finally-concluded litigation after examining three factors: "'whether the facts [of the two cases] are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" Funny Guy, 293 Va. at 154-57. (quoting Restatement (Second) of Judgments § 24(2)). Under the court's pragmatic approach, the existence of new theories of relief or requests for different remedies not demanded in the first action are irrelevant. Id. at 154-55 (citing Restatement (Second) of Judgments § 25)

In Passaro's case, his claims in state and federal court are all intimately related. He challenged his termination in both the administrative hearing and the present action. See Am.

Compl. at 7 (ECF No. 13) (challenge to the Department's recommendation that Passaro be terminated); Grievance Form (ECF No. 32-2) (complaining of "[i]llegal, improper and/or unjustified discipline and termination of S.A. Passaro, as well as discrimination, harassment and failure to accommodate a disability"). Both cases dealt with Passaro's supervisors' alleged history of harassment and antagonism towards him. See Am. Compl. at 2 (ECF No. 13); Decision of Hearing Officer at 4-5 (ECF No. 32-3) (observing that Passaro alleged as far back as spring 2012 that his supervisor had singled him out for harassment). All the claims in both actions relate to his allegation that his supervisors had an improper motivation in the decisions they made regarding his employment and, ultimately, their recommendation to terminate him. See Am. Compl. at 2 (ECF No. 13); Decision of Hearing Officer at 16 (ECF No. 32-3) ("There is insufficient evidence to support the conclusion that the Agency took disciplinary action against [Passaro] because of a dislike of [him] rather than because of a legitimate objective of addressing [his] work performance."); see also Letter from Passaro to Internal Affairs, Ex B. to Grievance Form (p. 14 of ECF No. 32-2) (showing he relied on a claim of national origin discrimination to support his administrative grievance). Thus, the conduct Passaro challenged in both cases was closely related in time, origin, and motivation, which supports the conclusion that the claims in the separate cases not only could have been joined together but are in fact the same. The close factual relationship between the claims also supports the conclusion that they would have easily and—more importantly—economically been tried together. There would have been tremendous overlap in the evidence if the claims had been tried separately. This fact satisfies the "triable unit" factor of the Funny Guy test. Finally, due to the common practice of trying all discrimination claims together when one of the claims is wrongful termination, there could have been no surprise to the parties or frustration of their "business expectations." Taken together,

analysis of these three factors shows that the claims in the state and federal cases arose out of the same conduct, i.e. Passaro's supervisors' allegedly discriminatory acts against him. If these employees did in fact disadvantage Passaro due to his national origin prior to his termination, those discriminatory acts were part of a broader continuum of challenged conduct which led to his ultimate termination. They were not discrete acts that could not be tried together.

Passaro relies heavily on Dionne v. Mayor of Baltimore, 40 F.3d 677, 686 (4th Cir. 1994), for support, but the case is inapposite. Fundamentally, the preclusion analysis differs because Dionne did not involve a final judgment of a state court—only the decision of an administrative body. Id. at 679-81. In that case, the Fourth Circuit found claim preclusion was inappropriate because the state administrative procedure standing along severely limited the plaintiff's ability to vindicate his rights against discriminatory conduct in his employment. Id. at 683-84. But in this case, unlike in Dionne, the hearing officer had the authority to review all of the claims he asserts in this court. See Va. Code § 2-2.3004(A). The procedures available to the hearing officer were robust. See Va. Code § 2-2.3005. The remedies he could award were expansive. See Va. Code § 2.2-3005.1. Additionally, Passaro pursued review in state court, all the way through to an appeal to the Supreme Court of Virginia. Having exhausted that review he may not pursue these nearly identical claims now. Because Passaro's current federal claims arose out of the same conduct and because the hearing officer had the authority to hear the present claims alongside the claims he did consider, Virginia's claim preclusion rule bars this successive litigation.

b. **The Defendants Did Not Waive the Benefits of Claim Preclusion.**

Passaro also argues the Defendants, in their prosecution of the current litigation, have waived the benefit of claim preclusion. This argument is also unavailing. In Virginia, a party

can waive the ability to assert preclusion by "either expressly or impliedly consenting to separate suits on a single cause of action. Furthermore, such a waiver will be presumed unless timely and proper objection is made." Gary Steel Prod. Corp. v. Kitchin, 197 Va. 471, 474-75 (1955); accord Republic Ins. Co. v. Culbertson, 717 F. Supp. 415, 419 (E.D. Va. 1989) (applying Virginia's law on waiver in the context of merger of claims to issues of claim preclusion); see also Pueschel v. United States, 369 F.3d 345, 356 (4th Cir. 2004) (quoting Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990)) (holding defendant waives preclusion if he consents "'in express words or otherwise,' to the splitting of the claim"). Although the authority cited above predates Virginia's adoption of Rule 1:6, that rule preserves "the ordinary caveats to res judicata," which preserve "historic limitations on the doctrine," including waiver. Funny Guy, 293 Va. at 151 n. 15 (2017) (citing Restatement (Second) of Judgments § 26(1)(a) (noting claim preclusion does not apply when "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein")).

To support his argument that the Defendants waived their right to claim preclusion by their conduct in the litigation, Passaro relies on Krakauer v. Dish Network, LLC, No. 1:14cv333, 2017 WL 4417957, at *4 (M.D.N.C. Oct. 3, 2017). The court begins by observing that decision in Krakauer was governed by the federal law of claim preclusion. There, a federal district court was considering what preclusive effect to give to the judgment of another federal district court and so was bound to the federal law governing claim preclusion. See id. at *1-3. In this case, this court is obliged to follow Virginia's rules on claim preclusion, see 28 U.S.C. § 1738, thus Krakauer is only useful by analogy.

Passaro does not argue for any express waiver of the benefit of claim preclusion. Pl.'s Br. at 5-7 (ECF No. 34). Rather, he identifies a number of facts he claims support the conclusion

that the Defendants impliedly waived the benefit of claim preclusion. First, he notes some of the material he received outlining his available remedies included descriptions of both the grievance process and federal proceedings under Title VII. He also claims the Defendants never argued during the proceedings before the EEOC, during the administrative hearing process, or during the litigation conducted in review of that process that he "was limited in his rights" because of the other, parallel proceedings. Id. at 6. Finally, he argues that the Defendants waited too long during the prosecution of the present litigation to avoid the conclusion that they impliedly waived the benefit of claim preclusion. Id.

The court finds each of these arguments unpersuasive. First, Passaro offers no support in statute or precedent for the proposition that the Defendants could have waived the benefit of claim preclusion by remaining silent about during the first-litigated state court matter. Virginia's claim preclusion rules are well established and long standing. Moreover, until Passaro commenced the federal action, the Defendants would have no occasion to believe he intended to pursue a precluded claim.

Second, the Defendants were far from dilatory in raising the possibility of claim preclusion once the present litigation began. They did so in their Answer to the Amended Complaint. (ECF No. 14). The facts of Krakauer, on which Passaro relies, were markedly different. In Krakauer, the first time the defendants attempted to assert claim preclusion was after they had lost a six day jury trial, resulting in a trebled-damages, multi-billion dollar verdict against them.[4] 2017 WL 4417957, at *2-6. By waiting so long to make an argument on claim preclusion, the Krakauer defendants entirely defeated one of the main purposes of claim preclusion: economy of resources, both for the court and the parties. See id. Under these

---

[4] At the time, the Krakauer court had not entered judgment on the jury's verdict pending a claims process for the class action. 2017 WL 4417957, at *2.

14

circumstances, and applying federal law, the court concluded this long delay in asserting claim preclusion was only a gambit to avoid an adverse verdict and that "[a]llowing litigants to delay objecting to dual proceedings until they receive a judgment in one proceeding 'could only encourage mischief.'" Id. at *6 (quoting Rotec Indus., Inc. v. Mitsubishi Corp., 348 F.3d 1116, 1119 (9th Cir. 2003)). Not only did the Defendants here raise claim preclusion as a defense very early in the conduct of the case—their first responsive pleading—they also timely sought to stay the case while the state action was pending an appeal in order to limit the expenses of the federal case. See Order to Stay (Oct. 13, 2017) (ECF No. 24). There is no mischief in the pleadings sufficient to justify an implied waiver of their claim preclusion defense.

## IV.     CONCLUSION.

For the foregoing reasons, Passaro has failed to identify a dispute of material fact that would allow him to avoid the Defendants' preclusion defense. The Defendants have carried their burden, and the Motion for Summary Judgment (ECF NO. 31) is therefore GRANTED. The Clerk shall enter judgment in favor of the Defendants, the Commonwealth of Virginia and the Virginia Department of State Police.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

June 21, 2018